# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# HELENA DIVISION

JESSE JAMES RAYBURN,
ADC #153338                                                                                         PLAINTIFF

V.                                  2:14CV00007 DPM/JTR

DONALD HEATH, Lieutenant; and
LENNY LARRY, Corporal;
East Arkansas Regional Unit, ADC                                                    DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Plaintiff, Jesse James Rayburn, is an inmate in the Arkansas Department of Correction. He has filed this *pro se* § 1983 action alleging that Defendants Lieutenant Donald Heath and Corporal Lenny Larry violated his constitutional rights by assigning him to a cell with an inmate afflicted with scabies, which is a contagious skin disease. *Docs. 2 & 8.*

Defendants have filed a Motion for Summary Judgment, and Plaintiff has responded. *Docs. 50, 51, 52, 53, 54, 56, 57, 58, & 64.* Thus, the issues are joined and ready for disposition. For the following reasons, the Court recommends that Defendants' Motion for Summary Judgment be granted, and that this case be dismissed, with prejudice.[1]

## II. Facts

The facts, viewed in the light most favorable to Plaintiff, are as follows:

1. In August of 2013, Plaintiff was in general population at the East Arkansas Regional Unit ("EARU").

---

[1] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

2.      On September 1, 2013, a non-party prison official ordered Plaintiff to be moved to the isolation area of the EARU while disciplinary charges against him were being investigated. *Doc. 51, Exs. B & C.*

3.      Upon receiving those orders, Defendant Lieutenant Heath determined that there was an opening in isolation cell 80, which was a two-man cell occupied by Oscar Stanley. Because Stanley previously had scabies, Defendant Heath instructed his staff to confirm with the medical department that Stanley was no longer on quarantine status. The medical department confirmed that Stanley had been removed from quarantine status and could have a cell mate. Additionally, the ADC computer system showed that Stanley was not currently quarantined or otherwise restricted from having a cell mate. Thus, Defendant Heath approved Plaintiff's transfer to isolation cell 80. *Id.*, *Exs. A & D.*

4.      On September 2, 2013, at 7:47 a.m., two non-party officers moved Plaintiff into isolation cell 80 with Stanley. *Doc. 54, Ex. F.* Plaintiff alleges that there was a sign on the door to isolation cell 80 stating that Stanley was quarantined.[2]

---

[2] It is impossible to determine from the security camera footage whether there was a quarantine sign on or near the door to isolation cell 80. *Doc. 54, Ex. F.* Plaintiff contends that there was a quarantine sign on the door, and Defendants claim there was not. The Court questions whether there was a quarantine sign on or near the entrance to isolation cell 80 because Plaintiff did not complain about his placement in isolation cell 80 until he filed his September 12, 2013 grievance -- *which was ten days after* he allegedly saw the sign warning him that he was being housed in a cell with a contagious inmate. Additionally, Plaintiff did not mention the quarantine sign in his September 12, 2013 grievance. However, for purposes of resolving the pending Motion for

*Docs. 8, 58, & 59.*

5.      On September 2, 2013, at 8:07 a.m., Defendant Larry escorted Nurse Mansfield, who is not a party to this lawsuit, as she conducted pill call in the isolation area. *Doc. 54, Ex. F.* After nurse Mansfield gave Stanley his medication, she told Defendants Larry and Heath that Stanley should be quarantined.[3] Defendant Heath told Nurse Mansfield to verify that information because the medical department had recently told his staff that Stanley was no longer quarantined. By the time the medical staff confirmed that Stanley was still on quarantine status, it was too late to move Plaintiff out of cell 80 because he has already been exposed to scabies. *Doc. 51, Exs. A, C, D; Doc. 56*

6.      On September 6, 2013, Plaintiff and Stanley were examined by a non-party nurse, who noted that both prisoners had skin lesions indicative of scabies. She

---

Summary Judgment, the Court will view this disputed fact in Plaintiff's favor and presume that there was a quarantine sign on or near the entrance to isolation cell 80.

[3] In his Amended Complaint and September 12, 2013 grievance, Plaintiff alleged that, *before* he was placed in the isolation cell 80, Nurse Mansfield told the escorting security officers that Stanley had scabies. *Docs. 8 & 51, Ex. D.* However, that assertion is clearly contradicted by the security camera footage that shows Nurse Mansfield going to isolation cell 80 twenty minutes *after* the two escorting security officers put Plaintiff in that cell with Stanley. *Doc. 54, Ex. D; see also Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (holding that: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"). More importantly, Plaintiff does *not* allege that Nurse Mansfield or the escorting security officers told that information to Defendants Heath or Larry *before* he was placed inside isolation cell 80.

gave both prisoners a single of a topical ointment and ordered that their linens and clothing be boiled. *Doc. 64, Ex. G.*

      7.      On September 12, 2013, Plaintiff filed a grievance alleging that he had been wrongfully placed in a cell with a contagious inmate. *Doc. 51, Ex. D.* After investigating that grievance, prison officials determined that "the medical staff failed to properly notify security staff" that Stanley should have been quarantined. *Id., Ex. D at 7; Doc. 56, Ex. A.*

      8.      On September 17, 2013, Plaintiff was found guilty of the disciplinary infraction that caused him to be moved into isolation. As part of his punishment, he was transferred to a single man cell to serve thirty days in punitive isolation. *Doc. 51, Ex. G.*

      9.      On October 5, 2013, a nurse examined Plaintiff and determined that he no longer had scabies. *Doc. 64, Ex. G.*

      10.      After completing his thirty-day sentence in punitive isolation, Plaintiff returned to general population at the EARU. *Doc. 51, Ex. G.*

### III. Discussion

Defendants argue that, in their individual capacities, they are entitled to qualified immunity on the conditions of confinement claim Plaintiff has asserted

against them.[4] The Court agrees.

Qualified immunity protects government officials from liability for monetary damages in a § 1983 action unless, at the time of the alleged violation, their conduct violated a clearly established federal statutory or constitutional right of which a reasonable person would have known. *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080 (2011). Defendants are entitled to qualified immunity unless: (1) the supported facts, viewed in the light most favorable to Plaintiff, show that they violated a constitutional right; and (2) that constitutional right was clearly established at the time of the alleged violation. *Id.; Livers v. Schneck*, 700 F.3d 340, 350 (8th Cir. 2012).

Keeping these principles in mind, the Court concludes that Defendants are entitled to qualified immunity because there is no evidence that they violated Plaintiff's constitutional rights. Specifically, to proceed with his unconstitutional conditions of confinement claim, Plaintiff must have evidence suggesting that Defendants Larry and Heath *actually were aware of, but deliberately indifferent to,* a substantial risk that Plaintiff would be harmed by sharing a cell with Stanley. *See Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548-49 (8th Cir. 2010); *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (explaining that deliberate indifference, which is

---

[4] Defendants also argue that they are entitled to sovereign immunity on the conditions of confinement claim Plaintiff has asserted against them in their official capacities. *Doc. 51*. This argument is moot because the Court has already dismissed all official capacity claims. *Doc. 33*.

a higher standard than mere negligence, is defined as a reckless disregard of "the known risk").

In an effort to prove deliberate indifference, Plaintiff alleges that there was a quarantine sign on or by the door to isolation cell 80. *Docs. 58 & 59.* Assuming such a sign was posted, there is *no evidence* that Defendants Heath and Larry saw the sign or were otherwise aware that Plaintiff should not be moved into a cell with Stanley. To the contrary, the only evidence in the record is that Defendant Heath believed, after consulting the medical department and the ADC computer system, that Stanely *was no longer quarantined or otherwise restricted from having a cell mate. Doc. 51, Ex. A.* Similarly, the uncontroverted evidence clearly establishes that Defendants Heath and Larry first learned that Stanley should have been quarantined approximately *twenty minutes after* Plaintiff had been moved into isolation cell 80 and exposed to scabies. After being advised of these facts, Defendants immediately contacted the medical department which later instructed them to keep both Stanley and Plaintiff quarantined.

At most, the evidence suggests that the *medical department* may have *negligently* failed to notify Defendants Heath and Larry, and the other security staff members, that Stanley was still on quarantine status. However, a constitutional claim cannot be premised on acts of negligence or even gross negligence. *See Holden,* 663

F.3d at 341. Finally, Defendants Heath and Larry cannot be held responsible for acts of negligence committed by personnel in the medical department. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (explaining that, in a § 1983 action, a plaintiff must establish that "each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Because Plaintiff has failed to produce any evidence establishing that Defendants violated his constitutional rights, Defendants are entitled to qualified immunity and the conditions of confinement claims raised against them, in their individual capacities, should be dismissed, with prejudice.

### IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment (*Doc. 50*) be GRANTED, and the conditions of confinement claims raised against them, in their individual capacities, be DISMISSED, WITH PREJUDICE.

Dated this 16th day of November, 2015.

_____
UNITED STATES MAGISTRATE JUDGE